UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

UNITED STATES OF AMERICA          )     DOCKET NO. 3:19-CR-384
                                  )
        vs.                       )
                                  )
HAROLD BROOME, JR.,               )
                                  )
            Defendant.            )
_____  )


TRANSCRIPT OF SENTENCING HEARING
BEFORE THE HONORABLE MAX O. COGBURN, JR.
UNITED STATES DISTRICT COURT JUDGE
MARCH 3, 2021

APPEARANCES:

On Behalf of the Government:

        SANJEEV BHASKER, ESQ.
        United States Attorney's Office
        227 West Trade Street, Suite 1700
        Charlotte, North Carolina 28202

On Behalf of the Defendant:

        W. ROB HEROY, ESQ.
        Goodman Carr Laughrun Levine & Greene, PLLC
        301 South McDowell Street, Suite 602
        Charlotte, North Carolina 28204




        Cheryl A. Nuccio, RMR-CRR
        Official Court Reporter
        United States District Court
        Charlotte, North Carolina

1                    P R O C E E D I N G S

2              (Due to COVID-19, the courtroom has been

3    reconfigured to allow for social distancing.  The proceedings

4    were reported to the best of my ability to hear and understand

5    what was being said from my position in the back of the well

6    behind counsel.  Many participants wore masks.)

7              THE COURT:  Okay.  Call the case of United States

8    versus Harold Broome, Jr.

9              Is the defendant ready?

10             MR. HEROY:  Yes, Your Honor.

11             THE COURT:  Is the government ready?

12             MR. BHASKER:  Yes, Your Honor.

13             THE COURT:  All right.  Mr. Broome, do you recall

14   appearing before a United States magistrate judge for the

15   purpose of entering a guilty plea in this case?

16             THE DEFENDANT:  Yes, sir, Your Honor.

17             THE COURT:  Do you remember being placed under oath

18   at that time?

19             THE DEFENDANT:  Yes, sir, Your Honor.

20             THE COURT:  Do you remember answering the judge's

21   questions?

22             THE DEFENDANT:  Yes, sir, Your Honor.

23             THE COURT:  Do you remember that those questions and

24   your answers to those questions were on a plea transcript

25   form?

1          THE DEFENDANT:  Yes, sir, Your Honor.

2          THE COURT:  Did you sign that form indicating the

3    answers you gave the Court that day were true and accurate to

4    the best of your knowledge?

5          THE DEFENDANT:  Yes, sir, Your Honor.

6          THE COURT:  Did you tell the Court the truth that

7    day?

8          THE DEFENDANT:  Yes, sir, Your Honor.

9          THE COURT:  If I were to ask you the same questions

10   today, would your answers be the same?

11         THE DEFENDANT:  Yes, sir, Your Honor.

12         THE COURT:  Okay.  Thank you.  Mr. Heroy, do you

13   believe that your client fully understood the questions that

14   the magistrate judge asked at the Rule 11 hearing?

15         MR. HEROY:  I do, Your Honor.

16         THE COURT:  All right.  Thank you.

17         Mr. Broome, did you answer the questions the way you

18   did and are you going forward with your guilty plea today

19   because you did commit the crime you're pleading guilty to?

20         THE DEFENDANT:  Yes, sir.

21         THE COURT:  Thank you.

22         Then based upon those representations and the

23   answers given by the defendant at the Rule 11 hearing before

24   the magistrate judge, the Court affirms the judge's finding

25   that the defendant's plea was knowingly and voluntarily made.

1  The Court also affirms the judge's finding that the defendant

2  understood the charges, the potential penalties, and the

3  consequences of his plea.  Accordingly, the Court affirms the

4  magistrate judge's acceptance of the defendant's plea of

5  guilty at the Rule 11 hearing and accepts the same here today.

6          Does the government have a factual basis?

7          MR. BHASKER:  Yes, Your Honor.  If it please the

8  Court, we'll proffer the factual basis that is encompassed in

9  the presentence investigation report.

10          THE COURT:  All right.  Thank you.

11          Does the defense stipulate that the Court may use

12  the offense conduct set forth in the presentence report to

13  form the factual basis?

14          MR. HEROY:  Yes, Your Honor.

15          THE COURT:  All right.  Thank you.

16          Based upon that stipulation and the offense conduct

17  set forth in the presentence report, the defendant's plea of

18  guilty before the magistrate judge, and the defendant's

19  admissions in open court today, the Court finds there is a

20  factual basis for the entry of the plea of guilty and enters a

21  verdict and judgment of guilty in this case.

22          Now, Mr. Broome, your case was referred to the

23  United States Probation Office for a presentence investigation

24  and the preparation of a presentence report.  The Court has

25  now received that report.  Have you read that report?

1          THE DEFENDANT:  Yes, sir, Your Honor.

2          THE COURT:  Have you gone over that report with your

3 attorney?

4          THE DEFENDANT:  Yes, sir, Your Honor.

5          THE COURT:  Do you now believe you understand the

6 contents of that report?

7          THE DEFENDANT:  Yes, sir, Your Honor.

8          THE COURT:  All right.  Thank you.

9          Mr. Heroy, have you gone over that with your -- the

10 presentence report with your client and do you believe he

11 understands the contents of the presentence report?

12          MR. HEROY:  Yes, Your Honor.

13          THE COURT:  Are there any objections to the

14 presentence report which remain outstanding today?

15          MR. BHASKER:  No, Your Honor.

16          MR. HEROY:  No.

17          THE COURT:  Thank you.

18          Then the Court will adopt the information contained

19 in the presentence report for the purpose of applying the

20 guidelines.  It would appear in the instant case that the

21 advisory guidelines provide for a total offense level of 29, a

22 criminal history category of V, and a guideline sentencing

23 range of 180 months.

24          Does the defense agree?

25          MR. HEROY:  Yes, Your Honor.

1        THE COURT:  Does the government agree?

2        MR. BHASKER:  Yes, Your Honor.

3        THE COURT:  All right.  Are there any motions from

4   the government?

5        MR. BHASKER:  No, Your Honor.  But I will mention

6   there is an accompanying SRV too in this matter.

7        THE COURT:  I know that and the Court will take into

8   consideration the sentence given in the -- in this case when

9   it sentences on the SRV.

10        MR. BHASKER:  Yes, Your Honor.

11        THE COURT:  Because I need to look at the total

12   sentence involved for this violation in making a determination

13   of what additional time might be there for the SRV.

14        Okay.  I'll hear from the defense on this -- first

15   on this sentence and then on how the SRV should apply.

16        MR. HEROY:  Your Honor, on this sentence I don't

17   think I have a whole lot to say.  You know, it is what it is

18   with the mandatory minimums versus the guidelines so I don't

19   have a lot to say here.  I've got a little bit to say as far

20   as the SRV time.  We're planning on admitting that just

21   procedurally.  I don't want to kind of waste any time.  If we

22   want to get into that now or if we want to --

23        THE COURT:  Let's just finish this one and once

24   we've got this, then -- it's a separate thing so then we'll do

25   the SRV and decide what, if any, time needs to be added on to

1  a 15-year sentence here.

2           MR. HEROY:  Okay.  I don't have anything to say

3  further on this, Your Honor.

4           THE COURT:  Okay.  Sir, what would you like to say

5  about this?

6           THE DEFENDANT:  As far as what, Your Honor?

7           THE COURT:  Anything you want to say.

8           MR. HEROY:  He does have something to say, Your

9  Honor.  It might make sense for him to read it when we do the

10  SRV sentence.

11           THE COURT:  All right.  That will be fine.  We'll do

12  that on the SRV.

13           What says the government?  Anything?

14           MR. BHASKER:  Your Honor, I think we may have some

15  statements at the SRV, but I'll just mention this.  This

16  defendant was looking at a career offender type sentence.

17  Factually, he was under federal probation when he was arrested

18  for the underlying offense at the state court level.  A

19  federal indictment was returned.  The defendant was then again

20  rearrested and continued to drug traffic, and ultimately pled

21  guilty in a superseding indictment.

22           As part of our plea negotiations in this matter in

23  good faith, we agreed to allow the defendant to plead guilty

24  to a drug conspiracy count with an 851 enhancement, and

25  rightfully so, in return for dismissing the substantive

1 counts. With the substantive count, possession with intent to

2 distribute or the distribution of cocaine, he would have been

3 a career offender. His criminal category would have been

4 category VI. He would be looking at a greater time period

5 still with a 180-month mandatory minimum.

6 So I just put that on the record. And I will come

7 back and incorporate this when I address the ultimate sentence

8 when the SRV is imposed.

9 Thank you, Your Honor.

10 THE COURT: Okay. Well, with this sentence the

11 Court is going to sentence the defendant -- I believe that

12 having looked at the facts of this case, that the sentence

13 involved in this case, while large, is appropriate, will

14 provide just punishment for the offense, will promote respect

15 for the law, will protect the public from further crimes of

16 this defendant while he is in prison, and will act as a

17 deterrent to others because this is a large chunk of time that

18 you're getting here, sir. So I think it will do all of those

19 things. It takes into consideration all of the 3553(a)

20 factors.

21 And therefore, pursuant to the Sentencing Reform Act

22 of 1984 and *U.S. v. Booker*, it is the judgment of this court,

23 having considered the factors noted in 18, United States Code,

24 Section 3553(a), that the defendant, Harold Broome, Jr., is

25 hereby committed to the custody of the United States Bureau of

1  Prisons to be imprisoned for a term of 180 months.

2        It's further ordered defendant be required to

3  support all dependents from prison earnings while incarcerated

4  as outlined in the presentence report.

5        The Court further recommends the defendant be

6  allowed to participate in any educational and vocational

7  opportunities while incarcerated.

8        The Court calls to the attention of the custodial

9  authorities that the defendant has a history of substance

10 abuse and recommends the defendant be allowed to participate

11 in any available substance abuse treatment program while

12 incarcerated and, if eligible, receive the benefit of United

13 States Code Section 3621(e)(2).

14       Upon release from imprisonment, defendant shall be

15 placed on supervised release for a term of 10 years.  Within

16 72 hours of release from the custody of the Bureau of Prisons,

17 defendant shall report in person to the probation office in

18 the district to which the defendant is released.

19       While on supervised release, defendant shall not

20 commit another federal, state, or local crime, and shall

21 comply with the standard conditions of supervised release that

22 have been adopted by the Court in the Western District of

23 North Carolina.

24       It's further ordered defendant shall pay the United

25 States a special assessment of $100.

1    The Court finds defendant does not have the ability

2  to pay a fine or interest and, having considered the factors

3  noted in 18, United States Code, Section 3572(a), will waive

4  payment of a fine and interest in this case.

5    The defendant shall forfeit the defendant's interest

6  in any properties identified by the United States.

7    There's a consent order of forfeiture filed on

8  July 17, 2020, which is document number 34, and it's hereby

9  made a part of this judgment.

10    The $100 criminal monetary penalty is due and

11  payable immediately.  However, the Court has considered the

12  financial and other information contained in the presentence

13  report and finds the following is feasible:

14    If the defendant is unable to pay the $100 monetary

15  penalty immediately, during the period of imprisonment,

16  payments shall be made through the Federal Bureau of Prisons

17  Inmate Financial Responsibility Program.

18    Upon release from imprisonment, in the unlikely

19  event there is any remaining balance, it shall be paid in

20  monthly installments of not less than $50 a month to commence

21  within 60 days of going on supervision until paid in full.

22  Throughout the period of supervision, the probation officer

23  shall monitor the defendant's economic circumstances and shall

24  report to the Court with recommendations as warranted any

25  material changes that affect the defendant's ability to pay

1 these court-ordered penalties.

2          Is there any legal reason that should not be the

3 sentence from the defense?

4          MR. HEROY:  No, Your Honor.  We would request a

5 designation as close to Charlotte as possible.

6          THE COURT:  I will recommend defendant be placed as

7 close to Charlotte, North Carolina, as possible.  I note

8 there's numerous people of interest here in the courtroom for

9 the defendant.  I will make that recommendation.

10          Any legal reason from the government?

11          MR. BHASKER:  No, Your Honor.

12          THE COURT:  All right.  That is the sentence in this

13 case.

14          Sir, you may appeal this conviction and sentence to

15 the Fourth Circuit Court of Appeals.  Any appeal must be done

16 in writing and must be done within 14 calendar days from when

17 I enter the written judgment in this case.  If you wish to

18 appeal and can't afford to appeal, you may appeal at

19 government expense.

20          I suggest you speak with your excellent attorney

21 about these rights and whether or not you wish in this

22 circumstance to appeal, but do you understand your right to

23 appeal as I have just explained it to you?

24          THE DEFENDANT:  Yes, sir, Your Honor.

25          THE COURT:  All right.  We'll now move on to the

1  supervised release violation.  The defendant, Mr. Broome, is

2  before the Court on the issuance of a warrant for violations

3  of supervised release set forth in the petition.

4       Does the defendant admit or deny the allegations in

5  the petition?

6       MR. HEROY:  He admits the allegations, Your Honor.

7       THE COURT:  Okay.  It would appear that the

8  defendant in this -- for these violations had a criminal

9  history category of III, is that right, at that time?

10      MR. HEROY:  I believe so, Your Honor.

11      THE PROBATION OFFICER:  Yes.

12      THE COURT:  Okay.  So that would be for -- a grade A

13  violation would be a range of 18 to 24 months; is that

14  correct?

15      THE PROBATION OFFICER:  Yes, Your Honor.

16      THE COURT:  All right.  Does the defense agree?

17      MR. HEROY:  Yes, Your Honor.

18      THE COURT:  All right.  I'll hear from the defense

19  on sentencing, then.

20      MR. HEROY:  Thank you, Your Honor.

21      I'll start off by acknowledging that everything that

22  the government mentioned before is correct as far as

23  Mr. Broome was out, was on supervised release, committed the

24  first violation.  While that was still going on, the second

25  violation occurred.  Both of them new law violations.  Both of

1  them significant offenses.

2        And I would also say that the government has treated

3  him very fairly.  They could have come at him a lot harder, as

4  he mentioned, and they could have gotten a career offender

5  enhancement on him, and they probably would have gotten it.  I

6  don't contest any of that and we appreciate the fairness that

7  they've shown us so far.  That being said, I think a

8  concurrent sentence is appropriate on this and I'll tell you

9  why.

10        First, 180 months is a lot of time.  Mr. Broome is

11  now 39 years old.  Going in and serving 15 years, he's coming

12  out.  On top of that he's going to have 10 years of supervised

13  release over his head.  Beyond that, we're also talking about

14  an offense where even though career offender could have

15  applied, it didn't and we wound up with an offense where the

16  guideline range came in substantially under the mandatory

17  minimum.  So I believe the guideline was, I think, 144 to 175

18  months, something in that ballpark -- 140 to 175.  The 851

19  comes in and bumps that up to 180 months.  And so I think

20  that's one more factor to take into consideration.

21        Beyond that, he's got a tremendous amount of support

22  in the community.  We've got a couple folks here that do want

23  to speak on his behalf.  His father and another friend are

24  both going to address the Court.  But I would suggest that

25  between the amount of time that he's going to be doing, coming

out and having that supervised release over his head, and
having the support system here in Charlotte, and his father is
going to talk a little bit about some employment that they've
discussed that's available for him, I contend that a
concurrent sentence is appropriate.

And I'll have a couple folks speak for him now, Your
Honor.

THE COURT:  That would be fine.

MR. BROOME:  Good afternoon, Judge.  If it please
the Court, I thank the Court for hearing me today on behalf of
my son Junior.

Like Rob said, ain't much I can say.  I do thank the
state that's been working with him, the government, on behalf
of his sentence.  But I too have been in the same situation.
And by the grace of God, he brought me from a long ways.  My
life has totally been turned around from where I used to be
and it wasn't easy.  With the peer pressure out there in our
society today, it's easy to get tangled up in the web and
sometime we can't find our way out.  Sometime we feel like we
can fix it another way and we try to fix it this way and we
end up back in the same spot.  I been there and I seen this
happen in my own life, so I had to make a change within myself
and make a decision that I can't fix this alone so I started
applying myself to other situations that will help me to be a
better man and be productive in society.

1    And being here today I can say that it worked.  I'm
2  in a union.  I'm in the 848 union.  I'm an iron worker.  I'm a
3  welder.  This is some of the things I shared with Rob about
4  getting him involved with when he get out where he can get in
5  a union, have a future, also have a retirement.  And also he
6  can do other things to make hisself available to be a citizen
7  to society by being a part of any activity that the Court
8  might see fit that he should be involved with when he get out
9  to, you know, give back so to say.

10    I ask that -- my age now, I'll be 65 in a few
11  months.  I heard the guidelines and I heard the sentence.  By
12  the grace of God, I pray to God to let me live to see many,
13  many more years, but that ain't for me to say.  I just live
14  one day at a time.  So I ask the Court today that if you see
15  fit in the position that you're in, Your Honor, that he can
16  return home where I get to see him again.  He can see his
17  kids.  He got children that's growing up at this age and one
18  here and his daughter is back here, that he get a chance to
19  live and spend some time and watch them grow.

20    By the grace of God, the only reason I'm standing
21  here because it's all about the grace of God.  I know that I
22  would have never made it without God's grace.  And we all been
23  praying that Junior would come to that place too.  And he said
24  he is and I truly believe he has.  This is going to turn his
25  life around.  Sometime it take a lot that you're confronted

1  with to see yourself.  And I know that he sees now that you

2  can't win.  There's no win in the way we do things and the way

3  he was trying to do things.

4        I believe that he's learned his lesson.  I believe

5  that if the Court would see fit to give him another

6  opportunity to return home and be that productive citizen he

7  can be out there in society and also be a father to his

8  children, I know that he can do it.  I'm praying and believe

9  in the Lord that it will work.  But I ask the mercy of the

10  Court that if you see fit, that you could be a little lenient

11  and let him return home to his family and we'll be so grateful

12  to you and the government for all that y'all are doing on his

13  behalf.  I appreciate that.

14        THE COURT:  Yes, sir.  Thank you.

15        MR. BROOME:  Thank you.

16        MS. GRIER:  Good evening, Your Honor.  I'm Harold's

17  mother.

18        THE COURT:  Yes, ma'am.

19        MS. GRIER:  He's my favorite -- one of my favorites.

20  Harold was a special child and he do good by everybody.  All

21  you had to do was ask him.  He's got a good heart.  If you

22  read some of the letters that was sent in, you see that Harold

23  is a -- he's a good person.  He's not violent.  He never been

24  in jail for fighting or beating nobody.  He's a family man.

25  He love his kids.  When my husband passed, it was two years

ago, I would wake up in the night. He be sitting in my room watching me. He was there for me. And he always been there for me.

But Your Honor, please, as my ex-husband has stated, I be 65 this year. I don't want him be in prison and I'm gone. I want him to be home with me. But Your Honor, please, just have mercy on him because he is a good person. He's not a violent person. Don't see no violence in his record. He's not violent. And he have a good heart for his family. He love his family as you can see. There's more wanted to come but they know they probably couldn't.

But he's a good person and I love my son with all my heart. And I hate what he got into, but he have to make it -- you know, make a change for hisself. But just have mercy on him for me because I don't want to pass and he's not with me.

Thank you, Your Honor.

THE COURT: Yes, ma'am. Thank you.

MR. HEROY: Very briefly before Harold addresses the Court, I guess to piggyback a little on what his father said. You know, he and I have talked a good deal about how he got here. And I think he got out of prison and it wasn't working with employment and paying the bills with kids and he got back into the ways that he shouldn't have. And he's getting hit with a big hammer on account of that that he deserves, and he knows that. And I think he's coming around to realizing that

1 | there's no -- there's no winning with this. You know, that
2 | it's either coming back and forth to prison or getting killed
3 | over it. So I think he's getting that and I think 180 months
4 | is going to get that lesson to him.
5 | And I know he's got something that he's thought out
6 | pretty carefully that he and I have talked a lot about that
7 | he's ready to go over with the Court as well.
8 | Go ahead.
9 | THE DEFENDANT: To Your Honor Cogburn, sir, I would
10 | like to start off by making an apology to my family, my
11 | mother, my father, my kids, my sister and brothers for putting
12 | them through this nonsense. I shouldn't be standing here in
13 | this courtroom putting my life in the hands of a court. I
14 | would like to -- excuse me, in the hands of a court -- put my
15 | life in the hands of a courtroom.
16 | I would like to also apologize to you and your
17 | court, sir, for standing here in your courtroom. I know one
18 | thing for sure, I'm not perfect. But there comes a time in a
19 | person's life, my life, whereas I have to talk -- ask myself
20 | is this the life I want to live, in and out of the system?
21 | The answer is no, I cannot continue this life, this cycle. I
22 | have to break the chain and reevaluate my life and my future.
23 | I'm not getting younger, not by far. I don't wish to grow old
24 | in a jail cell, prison or any institution. That's not the
25 | life I want to live.

My kids, they love me so much and I know all they want is for me to be in their life. That's the one thing I also want, but to achieve that I have to make some changes in my life. One is to take a long look in the mirror and ask myself who am I? Who do I want to be? How do I want to be remembered? Because my kids are looking at me and my mistakes. I don't want my daughters with a guy in and out of prison. I don't want my son going to jail, prison, or any institution either. I don't want that life for him. I got the most beautiful gifts in the world and I can't let them down. I refuse to let them down. I have to set a better example, put my kids first and myself.

From this day forward I will do everything in my willpower to better my life. This is the only chance I have to get it right. It comes a point where you reach a fork in the road and you have to make a decision which direction would I choose? Would it be left or right? And I choose right.

Thank you, Your Honor.

THE COURT: Thank you.

What says the government?

MR. BHASKER: Thank you, Your Honor.

Let me start by just again acknowledging Mr. Heroy and thanking him for his professionalism. He did a great job representing his client and worked out a plea agreement that was very fair for his client and I think his client

1   understands that.  We also empathize with the family.  There

2   is never a winning family in these situations and our heart

3   empathizes with them in a very, very difficult situation.

4        A couple remarks in response to my colleague's

5   statements about the defendant's scoring in the original

6   sentence.  The defendant, had he been a career offender, would

7   have had an enhanced criminal category level, an enhanced base

8   offense level that would have been higher than 180 months, to

9   be fair.  So we did make some concessions out of a show of

10  grace and mercy in that regard.  But part of that plea

11  agreement included the defendant taking responsibility for his

12  supervised release violation.

13       And we are tasked with protecting the community

14  against a repeat offender who continues to sell drugs.  We

15  went back and looked at the transcript from 2015 where this

16  Honorable Court sentenced the defendant and it appears the

17  family came in back then and it was a very emotional

18  sentencing where the Court said things to the effect, "I don't

19  know how you were blessed with such great family members, how

20  they see such great things in you.  This will be the last time

21  the Court gives you any kind of help.  I don't care how many

22  people you bring in.  They're good people, but you're

23  responsible for all this stuff."

24       And we find ourself in a repetitive pattern where

25  the family pulls for the defendant -- or Mr. Broome, the

1  attorney pulls for Mr. Broome, but Mr. Broome continues to
2  engage himself in drug trafficking activity.
3           Equally damning in this situation is the defendant
4  was arrested in April 2019 while under federal supervision,
5  had just been released on federal supervision from federal
6  incarceration in September of 2017, so roughly a year and a
7  half time period, and then continued to traffic in narcotics
8  when he was arrested in January 2020.
9           So the concern for the country and the United States
10 is how do we protect the community from Mr. Broome?  He
11 clearly maintains contacts with drug sources.  He clearly has
12 the ability to be intimate with the drug trafficking market.
13 Over $36,000 in U.S. currency were seized from Mr. Broome.
14 Should he be held accountable for a supervised release
15 violation that's run consecutive to an underlying offense
16 where he was already given grace by the United States?  We
17 think yes.
18          So for all those reasons we would ask the Court to
19 run the supervised release violation consecutive to his
20 underlying 180-month sentence.
21          Thank you, Your Honor.
22          THE COURT:  Okay.  Well, two things are at play
23 here.
24          Number one, the Court believes that supervised
25 release is a separate violation.  It has to be punished

1    separately.   So the Court rarely runs supervised release

2    concurrent.   Rarely.

3              However, the Court is also tasked with taking into

4    consideration the total sentence of what we're talking about

5    here which is the drug sentence and the supervised release

6    which is related to the drug sentence.   So I have to take the

7    entire thing together.   And when I do that, the question is

8    another 18 to 24 months, or a portion thereof, what do I do

9    with that 18 to 24 months?

10             The government makes a solid argument that the Court

11   ought to sentence within the guidelines and sentence to a

12   consecutive sentence and give the defendant another 18 months

13   to protect the public and essentially lock him up for 17 years

14   instead of 15 years.

15             And there's argument to be made in that, Mr. Broome,

16   because you continue to violate the law when you're out.   You

17   don't seem to -- to this point you've not made a change in

18   spite of the great family and people that want you back home.

19   You've got children.   You just keep throwing all that stuff

20   away.   You just keep fiddling around with these drugs, which

21   if you don't know by now, you're going to eventually get

22   caught doing it.   I mean, you can certainly get away with it

23   for some time, but you're going to eventually get caught.   And

24   this is going to take a chunk of your life out regardless of

25   what sentence I give.   And probably the next sentence will

1  take the rest of it out if you're -- I mean, you're going to

2  be in your -- I guess in your fifties when you get out of

3  jail.  And if you go back to this stuff, then the folks -- the

4  United States will probably decide they need to take care of

5  you from now on because you just can't be trusted on the

6  street.

7          Brings me back around to what's the right sentence

8  here.  And although the government makes a logical and good

9  argument, so does defense counsel.  So the government -- the

10  Court is going to -- going to vary downward some on this

11  and -- but I have to give something for the supervised

12  release.

13          Now, defendant is going to be on supervised release

14  for a whopping period of time here, as he should be.  Longer

15  than probably probation wants him on there.  They'll probably

16  be tired of him when he gets off supervision.  Ten years is a

17  long time to be acquainted with someone on supervision.  But

18  that's their job and they're going to do it.

19          You deserve the 18 to 24 months.  There's no

20  question about that.  But when I compare the question of

21  whether 15 years or 17 years is the right sentence, then it

22  gets down to what the Court thinks ought to happen in this

23  case.  So based on that the Court is going to vary.

24          Pursuant to the Sentencing Reform Act of 1984, it's

25  the judgment of this Court that the defendant, Harold Broome,

1  did willfully, intentionally, and without lawful excuse

2  violate the terms of his supervised release as set forth in

3  the petition and that supervised release is hereby revoked.

4  Defendant is committed to the custody of the United States

5  Bureau of Prisons for a term of 1 month to run consecutive to

6  the 15 years that the defendant received on the other

7  sentence.

8        Upon release from imprisonment, the defendant shall

9  not be placed on further supervised release on this since he

10 will be on 10 years of supervised release on the other charge.

11 Within 72 hours of release from the custody of the Bureau of

12 Prisons, defendant shall report in person to the probation

13 office in the district to which the defendant is released.

14       While on supervised release, defendant shall not

15 commit another federal, state, or local crime, and shall

16 comply with the standard conditions that have been adopted by

17 the Court in the Western District of North Carolina, and shall

18 further comply with all conditions to supervised release

19 previously imposed upon the defendant, the violation of which

20 was the subject of this hearing.

21       Any legal reason from the government?

22       MR. BHASKER:  To object?  No, Your Honor.

23       THE COURT:  From the defense?

24       MR. HEROY:  No, Your Honor.

25       THE COURT:  All right.  That's the sentence in this

1  case.

2          Now, you may appeal this revocation of your

3  supervision and sentence to the Fourth Circuit Court of

4  Appeals just like in the previous case.  If you wish to

5  appeal, you must appeal in writing and within 14 calendar days

6  from when I enter the written judgment in this case.  If you

7  wish to appeal and can't afford to appeal, you may appeal at

8  government expense.

9          Once again, you may talk to Mr. Heroy about whether

10 or not you wish to appeal this, but do you understand your

11 right to appeal as I have just explained it to you?

12         THE DEFENDANT:  Yes, sir, Your Honor.  And thank

13 you.

14         THE COURT:  Yes, sir.  Thank you.

15         Anything further from the government?

16         MR. BHASKER:  No, Your Honor.  Thank you, Your

17 Honor.

18         THE COURT:  Anything further from the defense?

19         MR. HEROY:  No, Your Honor.

20         THE COURT:  All right.  This matter is concluded.

21 Thank you.

22         (End of proceedings at 3:12 PM.)

23                    *****

24

25

1  UNITED STATES DISTRICT COURT

2  WESTERN DISTRICT OF NORTH CAROLINA

3  CERTIFICATE OF REPORTER

4

5

6          I, Cheryl A. Nuccio, Federal Official Realtime Court

7  Reporter, in and for the United States District Court for the

8  Western District of North Carolina, do hereby certify that

9  pursuant to Section 753, Title 28, United States Code, that

10 the foregoing is a true and correct transcript of the

11 stenographically reported proceedings held in the

12 above-entitled matter and that the transcript page format is

13 in conformance with the regulations of the Judicial Conference

14 of the United States.

15

16         Dated this 5th day of April 2021.

17

18

19                       s/Cheryl A. Nuccio

20                       _____
                         Cheryl A. Nuccio, RMR-CRR
                         Official Court Reporter

21

22

23

24

25