UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:19-cr-384-MOC

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | |
| vs. | ) | |
| | ) | **ORDER** |
| HAROLD BROOME, JR., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**THIS MATTER** is before the Court on Defendant's pro se Motion for Compassionate Release/Reduction of Sentence, and Motions to Amend Motion for Compassionate Release, Motion to Appoint Counsel. (Doc. No. 62, 66, 67). The Government has responded in opposition. (Doc. No. 65).

## I. BACKGROUND

### A. Defendant's Conviction in this Case

On April 11, 2019, law enforcement investigators in Charlotte executed a search warrant at Defendant's residence after confirming he was using his residence as a base for drug trafficking. (Doc. No. 41 at 5-7). Defendant ran from police as they executed the search warrant, but the police caught and arrested him. (Id. at 6). Investigators recovered about $4,000 in drug proceeds from Defendant's pocket upon his arrest. (Id.). Investigators searched the residence. Two people were inside, Defendant's girlfriend and his grandfather. (Id.). Investigators found over five kilograms of cocaine inside Defendant's residence, along with abundant drug distribution paraphernalia. (Id.). Investigators also seized drug proceeds from Defendant's girlfriend inside the residence, and she admitted her involvement in Defendant's drug-trafficking activities. (Id.).

1

Additionally, investigators searched three vehicles parked at Defendant's residence, two of which belonged to Defendant, and one of which belonged to his girlfriend. (Id. at 6-7). Inside Defendant's vehicles, investigators found approximately 636 grams of marijuana and large quantities of cash drug proceeds. (Id.). Inside Defendant's girlfriend's vehicle, investigators found nearly 31 grams of cocaine. (Id. at 7). In total, during this arrest and search, investigators seized: (i) over five kilograms of cocaine; (ii) approximately two pounds of marijuana; and (iii) approximately $36,636 in drug proceeds. (Id.). During a post-Miranda interview with investigators, Defendant admitted trafficking the seized narcotics. (Id.). He told investigators that his source of supply provided him a kilogram of cocaine at a time, which he then broke down and sold in smaller quantities. (Id.). He explained that he paid his supplier $37,000 per kilogram of cocaine. (Id.).

On December 18, 2019, a federal grand jury in the Western District of North Carolina indicted Defendant on the following charges: (i) conspiring to distribute and possess with intent to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A) ("Count One"); and (ii) possessing with intent to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A) ("Count Two"). (Doc. No. 3).

At the time of these offenses, Defendant was on federal supervised release after serving a 50-month federal prison sentence following his conviction in this Court on three counts of possessing with intent to distribute cocaine base, one count of possessing with intent to distribute cocaine, one count of possessing with intent to distribute marijuana, and one count of possessing a firearm while a convicted felon. See (Doc. No. 41 at 15-17; see also Case No. 3:13-cr-330).

On January 6, 2020, investigators arrested Defendant at his new residence in Charlotte for violating his federal supervised release. See (Doc. No. 41 at 7). Investigators also executed a

search warrant at this residence during Defendant's arrest, finding: (i) approximately 86 grams of cocaine; (ii) approximately 30 grams of crack cocaine; (iii) approximately 81 grams of marijuana; (iv) approximately $2,765 in drug proceeds; and (v) abundant drug distribution paraphernalia. (Id.).

On June 19, 2020, a federal grand jury in the Western District of North Carolina authorized a superseding indictment, charging Defendant with: (i) conspiring to distribute and possess with intent to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A) ("Count One"); (ii) possessing with intent to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A) ("Count Two"); (iii) possessing with intent to distribute cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) ("Count Three"); (iv) possessing with intent to distribute 28 grams or more of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B) ("Count Four"); and (v) possessing with intent to distribute marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(D) ("Count Five"). See (Doc. No. 21).

On July 15, 2020, Defendant pleaded guilty to Count One of the superseding indictment pursuant to a plea agreement. (Doc. No. 41 at 3). On March 3, 2021, this Court sentenced Defendant to 180 months in federal prison, to be followed by 10 years of supervised release. See (Doc. No. 45). For his supervised release violation in Case No. 3:13-cr-330, the Court sentenced Defendant to serve one month consecutive to his 180-month sentence in this case. See (Case No. 3:13-cr-330, Doc. No. 58).

Defendant is 39 years old. See (Doc. No. 41 at 2). He is currently serving his sentence at Federal Correctional Institution ("FCI") Bennettsville in Bennettsville, South Carolina, with an anticipated release date of November 11, 2032. See (Ex. A (BOP Profile) at 1, 2, 4). He has

served about 26 months of his 181-month sentence, which corresponds to about 17% of his sentence, assuming he obtains maximum credit for good time served. See (Id. at 4).

**B. Defendant's Criminal History**

Defendant's criminal history preceding this case includes convictions for: (i) resisting a public officer in 2001; (ii) possessing marijuana in 2002; (iii) two counts of possessing with intent to sell and deliver cocaine and a count of resisting a public officer in 2003, including having his probation revoked in 2005; (iv) another resisting a public officer in 2003, including a probation revocation; (v) selling cocaine, possessing with intent to sell and distribute cocaine, and possessing with intent to sell and distribute marijuana, all in 2005; (vi) possessing drug paraphernalia in 2008; (vii) possessing drug paraphernalia in 2011; and (viii) as mentioned above, his previous conviction in this Court on three counts of possessing with intent to distribute cocaine base, one count of possessing with intent to distribute cocaine, one count of possessing with intent to distribute marijuana, and one count of possessing a firearm while a convicted felon. See (Doc. No. 41 at 9-17).

Defendant's previous set of federal convictions involved conduct remarkably similar to the conduct that gave rise to this case. Investigators executed a search warrant at his residence after conducting multiple controlled purchases of narcotics from him. (See id. at 16-17). Inside, investigators found a variety of narcotics and a loaded pistol. (Id.). In addition to the drug trafficking and felon-in-possession of a firearm charges to which Defendant pleaded guilty in that case, the indictment also included a charge of possessing a firearm in furtherance of a drug trafficking crime, which the United States dropped in the plea agreement. (See id.; see also Case No. 3:13-cr-330). In that case, in imposing a 50-month prison sentence, the Court granted Defendant a two-level downward variance in the hope that Defendant's personal characteristics

4

and support network would deter him from future criminal activity. See (Doc. No. 41 at 16-17). He committed the offenses giving rise to this case while on federal supervised release for his prior set of federal convictions.

### C. Defendant's Motion for Compassionate Release

As noted above, this Court sentenced Defendant to 180 months in prison on March 3, 2021. See (Doc. No. 45). On October 22, 2021, the Clerk's Office filed Defendant's first motion for compassionate release. (Doc. No. 57). In that motion, Defendant requested release based on: (i) his 65-year-old-mother's high blood pressure; (ii) his 65-year-old father's high blood pressure and arthritis; (iii) his wife's sickle cell disease, "broncius," and upcoming thyroid and cervix surgeries; (iv) his son's partial blindness stemming from an accident; and (v) his daughter's allergies. (Id.). The Court denied the motion without prejudice because Defendant had not exhausted his administrative remedies with the BOP before filing his motion. See (Doc. No. 61). On November 29, 2021, Defendant submitted a compassionate release request to the warden, citing essentially the same reasons as in his original motion. (Doc. No. 62 at 5-6). The warden denied his compassionate release request on December 28, 2021. (Id. at 4).

On January 11, 2022, the Clerk's Office filed Defendant's second motion for compassionate release. (Doc. No. 62). In his motion, Defendant requests compassionate release based on: (i) his wife's sickle cell disease, "chronic bronchus," bad thyroids, and need to have her cervix removed; (ii) his son's partial blindness due to an accident and his sickle cell disease; (iii) his daughter, who requires allergy shots twice per week; (iv) his 65-year-old-mother's high blood pressure and arthritis; and (v) his 65-year-old father's high blood pressure, diabetes, and arthritis. (Id. at 2). He explains that his wife dealing with her health conditions while caring for two children during the COVID-19 pandemic "has been hard" and has "caused great stress."

(Id.). He also notes that his father had to retire due to his health conditions. (Id.). Finally, he states that his 180-month sentence is causing him mental distress. (Id.). Defendant states that he is fully vaccinated against COVID-19, and he makes no claim that he has any medical condition that renders him particularly vulnerable to COVID-19.

On February 2, 2022, the Court ordered the Government to respond. (Doc. No. 62). The Government filed its response in opposition on February 20, 2022. (Doc. No. 65).

**II.    DISCUSSION**

Once a defendant properly exhausts his administrative remedies, this Court may reduce Defendant's term of imprisonment "after considering the factors set forth in [18 U.S.C. § 3553(a)]" if the Court finds, as relevant here, that (i) "extraordinary and compelling reasons warrant such a reduction" and (ii) "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." § 3582(c)(1)(A)(i). Section 1B1.13 of the United States Sentencing Guidelines sets forth the Sentencing Commission's policy statement applicable to compassionate release reductions. See U.S.S.G. § 1B1.13. That policy statement, however, was adopted before the First Step Act, and the Sentencing Commission has not updated the policy statement to account for the fact that defendants are now permitted to file their own motions for compassionate release. In light of these circumstances, the Fourth Circuit Court of Appeals has held that § 1B1.13 is no longer an "applicable" policy statement that constrains the discretion of the district courts in finding that "extraordinary and compelling reasons" exists to warrant a reduction in sentence. See United States v. McCoy, 981 F.3d 271, 282 (4th Cir. 2020) ("By its plain terms, . . . § 1B1.13 does not apply to defendant-filed motions under § 3582(c)(1)(A)"). Thus, the Court is "empowered . . . to consider any extraordinary and compelling reason for release that a defendant might raise." Id. at 284 (quoting United States v.

Zullo, 976 F.3d 228, 230 (2d Cir. 2020)). The Court still may consider § 1B1.13 factors, however, because that Section "remains helpful guidance even when motions are filed by defendants." Id. at 282, fn.7. As the movant, Defendant still bears the burden of establishing that he is eligible for a sentence reduction, and that includes establishing that "extraordinary and compelling reasons" justify his request. United States v. Jones, 836 F.3d 896, 899 (8th Cir. 2016); United States v. Green, 764 F.3d 1352, 1356 (11th Cir. 2014).

Defendant's motion implicates the "Family Circumstances" definition of extraordinary and compelling reasons for compassionate release under U.S.S.G. § 1B1.3 cmt. n.1(C), which defines "extraordinary and compelling" reasons for compassionate release as: (i) "[t]he death or incapacitation of the caregiver of the defendant's minor child or minor children"; or (ii) "[t]he incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner." Although Defendant explains that his wife's medical conditions have made it difficult to care for their children during the COVID-19 pandemic, he does not assert that she has become incapacitated such that she is unable to care for the children, nor does he assert that she has become incapacitated and that he is her only available caregiver. Thus, he has not presented extraordinary circumstances. See, e.g., United States v. Gaskin, No. 15-352, 2020 WL 7263185, at *4 (E.D. Pa. Dec. 9, 2020) (explaining that the desire to care for elderly parents does not qualify as extraordinary); United States v. Cruz-Rivera, NO. 11-43, 2020 WL 5993352, at *7 (E.D. Pa. Oct. 9, 2020) (denying defendant's compassionate release motion, explaining that the defendant failed to carry his burden to show that his wife is incapacitated due to her breast cancer or diabetes, or that he would be the only available caregiver to their minor child if his wife were incapacitated); United States v. Dogan, No. 2:16-cr-00198-JAM-1, No. 2:16-cr-00199-JAM-1, 2020 WL 4208532, at *3 (E.D. Cal. July

7

22, 2020) (denying defendant's motion for compassionate release, explaining that the desire to assist with childcare, while children are home during the pandemic, is not sufficient; "The Court recognizes that caring for children fulltime, in the midst of a public health crisis, is increasingly challenging. But it is neither unusual nor insurmountable."); United States v. Henry, No. 13-CR-91, 2020 WL 3791849, at *4 (E.D.N.Y. July 6, 2020) ("Care of parents is not a qualifying basis for release."); United States v. Ingram, No. GJH-15-392, 2020 WL 3183698, at *2 (D. Md. June 15, 2020) (explaining that defendant's desire to care for his mother, who is nearing 60 and has risk factors, is insufficient to justify release). The medical conditions Defendant cites for his wife, children, and parents are not uncommon, nor does Defendant demonstrate that any of these conditions are particularly acute or incapacitating. In short, the circumstances that Defendant cites do not amount to a "truly exceptional case[]." McCoy, 981 F.3d at 287-88. Accordingly, Defendant has failed to meet the "exceptionally high standard for relief" by establishing an "extraordinary and compelling" reason justifying his release. (Id.).

Even if Defendant had demonstrated an extraordinary and compelling reason, the statutory sentencing factors weigh against release. Section 3582(c)(1)(A) requires a court to consider the factors set forth in 18 U.S.C. § 3553(a) before reducing a defendant's sentence. Those factors include "the nature and circumstances of the underlying offense and the history and characteristics of the defendant, as well as the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence and protect the public from further crimes of the defendant." United States v. Prater, No. 3:13-cr-133 (DJN), 2021 WL 54364, at *4 (E.D. Va. Jan. 6, 2021) (citing 18 U.S.C. § 3553(a)(1)–(2)). Section 3553(a) also instructs courts to "consider the kinds of sentences available and the sentencing range established for the offense." United States v. Nabaya, No.

3:17-cr-3, 2021 WL 54361, at *4 (E.D. Va. Jan. 6, 2021) (quoting 18 U.S.C. § 3553(a)(4)). Further, the Sentencing Commission policy statement, U.S.S.G. § 1B1.13, instructs courts to consider the factors set forth in 18 U.S.C. § 3142(g), including "the nature and circumstances of the offense charged …; the history and characteristics of the person …; [and] the nature and seriousness of the danger to any person or the community that would be posed by the person's release." Id. (quoting 18 U.S.C. § 3142(g)). Additionally, "the Sentencing Commission has emphasized that a defendant's rehabilitation while incarcerated," by itself, is "insufficient to warrant a sentence reduction." Prater, 2021 WL 54364, at *4 (citing U.S.S.G. § 1B1.13, application note 3). Here, the relevant statutory sentencing factors do not support compassionate release.

As an initial matter, Defendant's history and characteristics weigh heavily against him. He has a substantial criminal history, including convictions for: (i) resisting a public officer in 2001; (ii) possessing marijuana in 2002; (iii) two counts of possessing with intent to sell and deliver cocaine and a count of resisting a public officer in 2003, including having his probation revoked in 2005; (iv) another resisting a public officer in 2003, including a probation revocation; (v) selling cocaine, possessing with intent to sell and distribute cocaine, and possessing with intent to sell and distribute marijuana, all in 2005; (vi) possessing drug paraphernalia in 2008; (vii) possessing drug paraphernalia in 2011; and (viii) in 2015, convictions in the Western District of North Carolina for three counts of possessing with intent to distribute cocaine base, one count of possessing with intent to distribute cocaine, one count of possessing with intent to distribute marijuana, and one count of possessing a firearm while a convicted felon. See (Doc. No. 41 at 9-17). His first federal criminal case involved him prolifically trafficking a variety of narcotics while armed. (See id. at 15-17). In addition to the drug trafficking and felon-in-

possession of a firearm charges to which the defendant pleaded guilty in that case, the indictment also included a charge of possessing a firearm in furtherance of a drug trafficking crime, which the United States dropped in the plea agreement. See id.; see also Case No. 3:13-cr-330. In that case, in imposing a 50-month prison sentence, the Court granted Defendant a two-level downward variance in the hope that Defendant's personal characteristics and support network would deter him from future criminal activity. See (Doc. No. 41 at 16-17).

Defendant then continued to traffic large amounts of narcotics shortly after his release from prison on his first set of federal convictions, while on federal supervised release, resulting in the original indictment in this case. Investigators originally arrested him in connection with these offenses on April 11, 2019, seizing: (i) over five kilograms of cocaine (ii) approximately two pounds of marijuana; and (iii) approximately $36,636 in drug proceeds. During his post-Miranda interview, Defendant admitted to obtaining kilograms of cocaine from a supplier for $37,000 each, and then breaking them down and selling them in smaller amounts. (Id. at 5-8). Then, even after investigators arrested him on April 11, 2019, in connection with the conduct giving rise to this case—while he was on federal supervised release—Defendant continued to traffic narcotics, giving rise to the additional drug trafficking charges in the superseding indictment in this matter. Thus, the severity of the instant case also weighs heavily against Defendant's release.

Moreover, given Defendant's pervasive criminal conduct, even while on state probation and federal supervised release, he has not demonstrated respect for the law. And his prior state and federal prison sentences have not yet deterred him. Indeed, based on the increased amount of narcotics involved in this case, his criminal conduct appears to have escalated following his first federal prison term, even while on federal supervised release.

10

The Court further agrees with the Government that the sentencing factor that weighs most heavily is the need to protect the public from Defendant. Defendant has served only about 17% of his sentence, assuming he receives maximum credit for good time served. For the reasons set forth above, reducing Defendant's sentence by over 80% would not adequately take into account the severity of his conduct in this case or his history and characteristics, nor would it promote respect for the law, serve to deter Defendant or others, or most importantly, adequately protect the public from Defendant, particularly given his proclivity for recidivism. In sum, the Section 3553(a) factors weigh heavily against releasing Defendant.

Having thus considered Defendant's motion and reviewed the pleadings, the Court enters the following Order.

## ORDER

**IT IS, THEREFORE, ORDERED** that Defendant's pro se Motion for Compassionate Release/Reduction of Sentence, and Motion to Amend Motion for Compassionate Release, Motion to Appoint Counsel, (Doc. No. 62, 66), is **DENIED**.[1]

Signed: March 25, 2022

Max O. Cogburn Jr
United States District Judge

---

[1] To the extent Defendant alternatively requests that the Court order BOP to place him in home confinement, the Court lacks jurisdiction to enter such an order. Moreover, to the extent Defendant seeks appointment of counsel to assist him with his motion for compassionate release, the motion is denied.